## SAN ANTONIO FOUNDRY COMPANY v. TOM A. DRISH.

Decided February 1, 1905.

1.—Negligence—Unsafe Premises—Master and Servant.

It was negligence on the part of defendant to dig a hole in a pathway in its foundry used by its employes, without warning them of its existence, and plaintiff, who with another was carrying a ladle of molten metal without knowledge that the hole had been dug, could recover for injuries sustained in stepping into the hole and overturning the metal on himself.

**2.—Measure of Damages—Earning Capacity—Evidence.**

In an action for damages for personal injuries permanently impairing plaintiff's earning capacity, testimony as to what he earned at different times and places and from different employers was competent.

**3.—Leading Question—Harmless Error.**

A question propounded a witness, though leading, held not to have prejudiced complainant, where it brought out only testimony which had previously been given.

**4.—New Trial—Newly Discovered Evidence—Stenographer's Notes.**

Where a witness for appellant was sought to be impeached by testimony that he swore differently on a former trial of the case, the stenographic notes taken at the former trial were not newly discovered evidence which would require a new trial, it appearing that their existence was known during the progress of the trial and that an effort was made to have them produced but they could not be found and no application for postponement to obtain the presence of the stenographer having been made.

**· 5.—Charge—Assuming Facts.**

Charge upon plaintiff's right to recover for injuries received by stepping into a hole in a path established by defendant for the use of its employes, held not objectionable as assuming that defendant had established the path for the use of its employes.

**6.—Same—Assumed Risk—Contributory Negligence.**

Charge upon assumed risk and contributory negligence held to fully present the issues raised and to justify the refusal of special requested charges.

**7.—Brief—Assignments of Error—Propositions—Rules of Court.**

Under the rules of the Courts of Civil Appeals, propositions under one assignment of error will not be considered as propositions under another.

**8.—Master and Servant—Dangerous Premises—Duty to Warn Servant.**

Where the master dug a hole in a pathway habitually used by a servant in the discharge of his duty, it was incumbent upon the master to apprise the servant of such fact.

**9.—Same—Assumed Risk.**

The servant assumes such risks as arise from the employer's manner of carrying on his business and the character of instrumentalities adopted by him, but when an extraordinary risk is created through the acts of the master, the servant can not be held to have assumed it unless he knew or ought to have known of its existence.

**10.—Assumed Risk—Dangerous Premises.**

A servant does not assume the danger arising from the failure of the master to exercise reasonable care in providing a safe place in which to work, unless the danger is so obvious as to charge him with knowledge of its existence.

**11.—Same.**

Although plaintiff knew of and assumed the risk arising from digging holes, in which to set ladles, in the sand floor of the foundry, outside of the regular gangways left for the movement of the workmen, he can not be held to have assumed the risk from holes dug in an unusual place in a gangway unless he was chargeable with knowledge of its existence.

Appeal from the District Court of Bexar. Tried below before Hon. Edward Dwyer.

*Keller & Keller,* for appellant.—1. The court erred in allowing plain-

tiff, over defendant's objections, to testify as to what he had earned as wages at other times and places than at or about the time he was hurt; said testimony being too remote, and the true measure being what he earned at the business he was following at the time the injury was received. Railway Co. v. Abbott, 24 S. W. Rep., 299; Alabama G. S. Ry. Co. v. Yarbrough, 3 So. Rep., 447-449; Grant v. Brooklyn, 41 Barb., 381.

2. It was the duty of the court to grant a new trial to the defendant when it was properly made to appear that new evidence had been discovered since the trial which was material, and that the absence of said testimony at the trial was not due to want of diligence on the part of the defendant. Johnson v. Flint, 75 Texas, 379; Adams v. Eddy, 29 S. W. Rep., 180; McCartney v. Martin, 1 U. C. (Posey), 143.

3. Equal knowledge and opportunity of the servant with the master absolves the master from liability of any defects. Bennett v. Railway Co., 33 S. W. Rep., 335; Railway Co. v. French, 23 S. W. Rep., 644; Railway Co. v. Lyons, 34 S. W. Rep., 364; Cahill v. Hilton, 13 N. E. Rep., 339; Meador v. Railway Co., 37 N. E. Rep., 722; Goltze v. Railway Co., 44 N. E. Rep., 754; Dillingberger v. Weingartner, 45 Atl. Rep., 638; Light and Power Co. v. Murphey, 18 N. E. Rep., 30; Stewart v. Air Line Ry. Co., 41 S. E. Rep., 981; Marsh v. Chickering, 5 N. E. Rep., 57; Ehni v. Tube Works, 52 Atl. Rep., 166.

4. The servant assumes the risk of injury, not only from the perils ordinarily incident to his service, but also from special hazards existing because of the particular means or methods used by the master in the conduct of his business, of which the servant is informed, or which ordinary care would disclose to him. Burnham v. C. & M. R. R. Co. (N. H.), 44 Atl., 750; Hayden v. Smithville Mfg. Co., 29 Conn., 548; Rush v. Missouri Pac. Ry. Co. (Kan.), 12 Pac. Rep., 582; Simmons v. Chicago and Pr. Co., 110 Ill., 340; Richards v. Rought (Mich.), 18 N. W. Rep., 785.

5. The servant is charged with knowledge of all patent and obvious defects in any appliance or place of work which are known to him, and of such defects as he might have discovered by the exercise of ordinary care. Railway Co. v. Gray, 63 S. W. Rep., 929; Bonnet v. Railway Co., 33 S. W. Rep., 335; Railway Co. v. Johnson, 83 Texas, 633; Rogers v. Railway Co., 76 Texas, 502; Railway Co. v. Lyons, 34 S. W. Rep., 364; Bradford v. Railway Co., 66 Texas, 732; Railway Co. v. Lemon, 83 Texas, 143; Railway Co. v. Thompson, 33 S. W. Rep., 721; Railway Co. v. Fowler, 56 Texas, 457; Railway Co. v. Harriett, 80 Texas, 83; Green v. Sanson, 25 So. Rep., 335; Hall v. United States Con. Co., 78 N. Y. Supp., 619.

6. The servant, as a matter of law, is charged with knowledge of all patent and obvious defects, and of such defects as are known to him, or must necessarily have become known to him in the course of his duties. Hannig v. Missouri, K. & T. Ry. Co., 91 Texas, 347; Bonnet v. Galveston, H. & S. A. Ry. Co., 89 Texas, 72; Relyea v. Tomahawk, 85 N. W. Rep., 961; Coltze v. Railway Co., 44 N. W. Rep., 754; Corcoran v. Light Co., 51 N. W. Rep., 329.

*C. A. Davies* and *T. M. West,* for appellee.—1. There is no rule mak-

ing the particular calling in which a person is engaged at the time of his injury, or the wages he was then receiving, the standard of his damages. Railway Co. v. Long, supra; Railway Co. v. St. Clair, 51 S. W. Rep., 666; Railway Co. v. Long, 65 S. W. Rep., 882.

2.   Appellant's sixth, seventh, eighth and ninth assignments of error are not followed by propositions, as required by the rules. Halff v. Goldfrank, 49 S. W. Rep., 1095; Abernathy v. S. & R. I. Plow Co., 62 S. W. Rep., 786; Wells v. Houston, 69 S. W. Rep., 183; Western Union T. Co. v. Bryson, 61 S. W. Rep., 548.

FLY, ASSOCIATE JUSTICE.—This is an action for damages alleged to have accrued to appellee from personal injuries inflicted through the negligence of appellant in digging a certain hole in a pathway in its foundry, and not warning appellee of its existence. A trial by jury resulted in a verdict and judgment for appellee in the sum of fifteen hundred dollars.

The facts show that appellee was an employe of appellant's foundry, and, while engaged with a moulder in carrying a ladle of molten metal, he stepped into a hole which appellant had excavated a few minutes before, in an unusual place, in a pathway used by employes in performing their labor. Appellee had no knowledge that the hole had been dug in the pathway, and in moving about in the discharge of his duties stepped into the same, tilted the ladle and poured the molten metal on his leg, and received painful, serious and permanent injuries. Appellee was not warned of the presence of the hole in the pathway. We conclude that appellee was injured through the negligence of appellant.

It was not error, as presented in the first assignment, for the court to permit evidence as to what appellee had earned as wages at other times and places than at or about the time and place of the injury. The earning capacity of appellee was in issue, and testimony as to what he received for his labor at different times and places, and from different employers, was legitimate and proper, as tending to show his earning capacity. Few personal injury suits are tried in which such inquiries are not made, and in a few instances they have been objected to, but the objections have not been sustained by trial or Appellate Courts. In the case of Missouri, K. & T. Ry. Co. of Texas v. St. Clair (51 S. W. Rep., 666), the same objection was interposed to such testimony, and this court said: "There was testimony showing plaintiff to have been an experienced railroad man in many capacities, and fitted, when injured, for employment in any of them, in good health, and nothing to disqualify him. He was entitled to have these matters and the compensation of these various positions placed before the jury, to aid in determining the probable extent of his loss." In the case of Chicago, R. I. & T. Ry. Co. v. Long (26 Texas Civ. App., 601, 65 S. W. Rep., 882), the foregoing decision was cited and approved by the Court of Civil Appeals of the Second District, and the court said: "Merely because appellee was engaged as a section hand, and earning but $1.25 per day, when he was injured, did not prevent his pleading and proving that he was then a blacksmith by trade, and, as such, capable of earning more than $1.25 per day."

The second assignment of error complains that a question propounded to appellee, as to his back being towards the hole, was leading. Appellee

had testified that, while he was watching· to find out when to pull the ladle out, he had his back to the hole into which he afterwards fell. He was then asked the following questions, and gave the following answers: "Q. From the time you entered the door and placed the ladle in there, what was the necessary position of your face to do the duty as demanded of you? Ans. Facing the moulder. Q. That is, as I understand you, to keep your back to the hole? Ans. Yes." The last question was the only one objected to as leading. It can be readily seen that, however leading it may have been, it brought forth nothing but what had already been sworn to, and consequently could not have hurt appellant.

Among other things appellant applied for a new trial on the ground of newly-discovered testimony, and the refusal of the court to entertain it constitutes the error propounded through the fourth assignment. It appears that, during the trial, two witnesses, who had served as jurors on a former trial of this cause, testified that Koscielski, a witness for appellant, had sworn differently on that trial from what he testified on this, and appellant sought a new trial on the ground that evidence had been newly discovered. What the evidence was does not clearly appear, but it may be reasonably inferred that it was the stenographic notes of Mrs. Johnson, taken on the former trial, as ·it is stated in the motion for new trial: "That, at the time said witnesses, Sprague and Hunter, testified as above stated, counsel for defendant was taken by surprise, and endeavored to reach Mrs. Johnson by telephone, and get her notes of the testimony, but were unable to do so before the trial was closed," etc. It is stated in an affidavit of one of the attorneys for appellant, attached to the motion for new trial, that appellant was taken by surprise at the impeaching testimony, and that affiant immediately tried to get in communication with Mrs. Johnson so as to have her to bring her stenographic notes to the court, but she could not find her notes, and appellant was compelled to close without having the same. What the notes would have shown as to the former testimony of the discredited witness does not appear. It is clear that the facts alleged did not bring the motion for new trial within touch with the rules prescribed in cases of newly-discovered testimony. That the matters alleged were not newly discovered affirmatively appears from the affidavit of the attorney, that he knew them while the trial was in progress. He made no application for a postponement or continuance in order to obtain the presence of Mrs. Johnson, although she was in the City of San Antonio, in easy reach of the process of the court. There is no merit in the assignment.

The court charged the jury as follows: "If you believe from the evidence that on or about the 13th day of October, 1903, plaintiff was in the employ of the defendant as a laborer, and that on said day plaintiff, in the discharge of his duty, was engaged in assisting to carry a ladle filled with molten metal from the furnace to the moulding room of the defendant, and that, while so engaged, plaintiff walked over and along a certain path in the moulding room, which was established by the defendant for the use of its employes to walk over and along," etc., and it is insisted that the court therein assumed that appellant had established a path for the use of the employes. We do not think the charge can properly be so construed, but the evident meaning of the charge was that the jury must believe, from the evidence, not only that appellee walked along a certain

path, but that the path had been established by appellant for the use of its employes.

The sixth, seventh and ninth assignments are grouped in appellant's brief, although the first is in regard to assumed risk and the last two in regard to contributory negligence. Under the three assignments of error are two general propositions of law: the first, that it is error to refuse to give a charge which is correct in point of law and applicable to pleadings and evidence; and second, that, in lieu of charge presenting rules of law, a party has the right to prepare and demand charges applicable to specific matters of complaint as defense. The propositions are perhaps abstractly correct, but are not shown to have any particular application in this case. The court instructed the jury that, if appellee was negligent in his manner of using the path, and such negligence contributed to his injury, he could not recover; or if he knew of the manner in which appellant carried on its work, he assumed not only all the risks incident to such employment, but all dangers which were obvious and plain, and if his injuries were the result of the same he could not recover. It was not error to refuse the special charges.

The eighth assignment claims error on account of a refusal to give a charge on the subject of assumption of risk, and asks this court to consider, as propositions under this assignment, the propositions under the preceding assignments and under a succeeding one. This is a course of practice that will not be approved by the court, and it will not sanction a mode of briefing a case which not only fails to comply with the rules but unnecessarily increases the labor of this court.

The twelfth assignment of error asks for a review of the testimony, the contention being that appellee was guilty of contributory negligence in going backwards, and that he knew the manner in which appellant conducted its work, and assumed all risks arising therefrom. Our conclusions as to the facts dispose of this assignment, but it may be said, in addition, that the hole was in an unusual place in the pathway where appellee had never known one to be placed before. No one had called his attention to it and he had not seen it. He had to pass the hole in order to follow instructions as to where he should carry the metal. The foreman saw appellee moving backwards toward the hole, and yet did not warn him. The foreman swore that it was the duty of appellant to keep the pathways open for moulders carrying hot metal. The evidence was conflicting as to whether it was proper and usual for a man occupying the position held by appellee at the time to move backward with the ladle; the jury found that it was, and that appellee was not guilty of negligence. He was bound to watch the moulder who was with him, and could not look for holes, and, never having known a hole to be placed as this was, in the pathway, he had the right to assume that the way was open. It was the duty of appellant to apprise appellee of the fact that the hole had been dug in the unusual place that it was. (Bonnet v. Railway Co., 89 Texas, 72.)

The right of an employer to carry on his business in his own way must be recognized, and incidental to it is the principle that any risk that arises merely from the character of the instrumentalities adopted by him, and not from any defect in them, is an ordinary one attending the employment. Such risks as arise from the permanent, open, visible condi-

tions of the master's business are assumed by the servant. But, when an extraordinary risk is created through the acts of the employer, the servant will not be held to have assumed it unless he knew, or ought to have known, of its existence. (San Antonio & A. P. Ry. Co. v. Engelhorn, 24 Texas Civ. App., 324.) A servant does not assume the danger arising from the failure of the master to exercise reasonable care in providing a safe place in which to work, or safe appliances, unless the danger is so obvious as to charge him with knowledge of the same. Applying these principles to this case, it may be stated that appellee knew of and assumed the risks arising from digging holes, in which to set the ladles, in the sand floor of the foundry outside of the regular gangways left for the movement of the workmen; but, when the hole was dug in an unusual place in a gangway, appellee would not be held to have assumed the risk arising from it unless he was chargeable with a knowledge of its existence.

We find some cases directly illustrating this principle in connection with openings made or left in floors. In the case of Maguire v. Little (13 Atl. Rep., 108) the Supreme Court of Rhode Island thus states, and comments on a case somewhat similar to this: "The testimony shows that the opening into which the plaintiff fell and was injured was directly in the doorway through which he had to pass in going to the loft to which he was sent. The plaintiff, having no knowledge of the loft, would not naturally expect to find an opening in such a location, and might, in our opinion, fall into it without negligence, unless he was notified of its existence."

In the case of Hogarth v. Pacasset Mfg. Co. (45 N. E. Rep., 629) the plaintiff fell into a trapdoor of whose existence she swore she was ignorant, and the Supreme Court of Massachusetts said: "Her testimony is hard to believe, no doubt, as she passed over the door many times a day, and as the wheels of her bobbin-box probably jolted as they went over its hinges; but we can not say she must have known it. Again, it does not follow, from the fact that she took the risk of dangers permanently incident to the visible permanent structure, that she must be assumed actually to have known of the trapdoor, and the possibility of its being open once in a while. Thus it will be seen that the case is stronger than Young v. Miller (45 N. E. Rep., 78), and, notwithstanding the decision in that case, which was very near the line, a majority of the court are of opinion that a jury might have found the plaintiff entitled to be warned to look out for the opening of the doors." The case of Young v. Miller referred to was decided by a majority of the same court, and Justice Holmes, in delivering the opinion, said: "A majority of the court are of opinion, although I share the doubts of the minority, that the defendant's duty did not extend to giving notice or warning that the doors were open to one who knew that they were liable to be so at any time."

The facts in this case are stronger than in the two cases reviewed, for the reason that appellee had been in the employ of appellant, at that time, for only two or three days, had never seen a hole dug where this was, and the hole had just been dug there, as it was not there when appellee was in the room about thirty minutes before he was hurt. There was nothing to warn him of the presence of the hole, and his whole atten-

tion was absorbed in the business of moving the ladle of molten metal. The foreman stood quiescently by and allowed appellee to approach, without warning, a hole of whose existence he would naturally be ignorant, and fall into the same. We do not think we would be authorized to hold, as a matter of law, that appellant was charged with knowledge of the existence of the hole and assumed the risk of falling into it.

The judgment will be affirmed.

*Affirmed.*

Writ of error refused.