HARTSHORN BROS. et al. v. WILLIAM-
SON.

(Court of Civil Appeals of Texas. Ft. Worth.
Feb. 22, 1913. Rehearing Denied
April 5, 1913.)

1. MASTER AND SERVANT (§ 107*)—TRANSITO-
RY CONDITION—PLACE OF WORK.

The piling up of excelsior from the cutter
around the machine for baling up, during the
absence of the servant, who fed the baling ma-
chine, on an errand for the master, rendering
the work of feeding the machine dangerous,
was not a mere transitory condition, not to
have been anticipated by the master in provid-
ing a safe place to work.

[Ed. Note.—For other cases, see Master and
Servant, Cent. Dig. §§ 199–202, 212, 254, 255;
Dec. Dig. § 107.*]

2. MASTER AND SERVANT (§ 281*)—PERSONAL
INJURIES—CONTRIBUTORY NEGLIGENCE.

In an action for personal injuries by a
servant, who in feeding a machine for baling
excelsior, while standing on excelsior piled
around the machine, fell and had his hand
crushed in the press, evidence *held* to warrant
a finding that the servant was not guilty of
contributory negligence.

[Ed. Note.—For other cases, see Master and
Servant, Cent. Dig. §§ 987–996; Dec. Dig. §
281.*]

3. MASTER AND SERVANT (§ 280*)—ASSUMP-
TION OF RISK—EVIDENCE.

In an action for personal injuries by a
servant, who in feeding a machine for baling
excelsior, while standing on excelsior piled
around the machine, fell and had his hand
crushed in the press, evidence *held* to warrant
a finding that the servant did not assume the
the risk.

[Ed. Note.—For other cases, see Master and
Servant, Cent. Dig. §§ 981–986; Dec. Dig. §
280.*]

4. APPEAL AND ERROR (§ 1002*)—REVIEW—
FINDING OF JURY—CONFLICTING EVIDENCE.

Where the evidence is conflicting, the find-
ing of the jury is not reviewable on appeal.

[Ed. Note.—For other cases, see Appeal and
Error, Cent. Dig. §§ 3935–3937; Dec. Dig. §
1002.*]

5. MASTER AND SERVANT (§ 153*)—DUTY TO
WARN—NEGLIGENCE.

It is the duty of a master to warn a boy
of all dangers not obvious, or not brought home
to his knowledge by the exercise of ordinary
care in the performance of his duties; a failure
to do so being negligence.

[Ed. Note.—For other cases, see Master and
Servant, Cent. Dig. §§ 314–317; Dec. Dig. §
153.*]

Appeal from District Court, Tarrant Coun-
ty; R. H. Buck, Judge.

Action by Elton C. Williamson, by next
friend, against Hartshorn Bros. and others.
Judgment for plaintiff, and defendants ap-
peal. Affirmed.

Capps, Cantey, Hanger & Short and Will
L. Evans, all of Ft. Worth, for appellants.
Lindsley M. Brown and Ben M. Terrell, both
of Ft. Worth, for appellee.

CONNER, C. J. Appellants have appealed
from a judgment against them in the sum of
$1,295.83, awarded as damages to Elton C.
Williamson, a minor, for personal injuries

received while operating a machine for bal-
ing excelsior.

A number of grounds of negligence were
alleged in behalf of the minor as a basis for
recovery, but the court submitted only the
issue of whether appellants had furnished
him a reasonably safe place in which to
work, also submitting the defense of as-
sumed risk and contributory negligence, which
had been pleaded by appellants. In dis-
posing of the appeal, therefore, we will con-
fine ourselves to matters pertinent alone to
the issues submitted.

The evidence shows that appellants, among
other things, were engaged in cutting and
baling excelsior. The cutting and baling ma-
chines were situated in a room from 60 to
70 feet long and 18 feet wide. The cutting
machines were located within about 15 feet
of the south end of the room, the baling
machine within a couple of feet of the east
wall of the room, and at its nearest point
some 6 or 7 feet north of the cutting ma-
chines. The cutting machines were four in
number, and were at the time operated by a
Mr. Stacks, who had charge of the room,
and whose business it was to feed the cut-
ting machines with wood. These machines
would shave the pieces of wood with which
they were fed into small strips or shavings,
known as excelsior. The excelsior would be
deposited toward the north and in the di-
rection of the baling machine. The baling
machine or press was made in much the
same way as an ordinary hay press. It con-
sisted of a box about 18 inches square and
14 feet long extending horizontally. About
midway of the box there was an opening
in the top about 22½ or 24 inches long and
about 15 or 16 inches wide, into which the
excelsior was fed. The excelsior, after be-
ing thus placed, which was done with the
hands, was pressed by what is termed a
"blockhead," which operated within the box
backward and forward about 22 inches; its
velocity being about 5½ or 6 strokes to the
minute. The machines in question were lo-
cated upon a concrete floor, and the baling
press extended above the floor some 2 or 3
feet. Elton C. Williamson was but a few
months over 16 years of age at the time of
his employment by appellant to operate the
baling machine, and was wholly without ex-
perience in the labor in which he was em-
ployed. The evidence shows that he was
hurt on the third day after his employment.
His testimony was to the effect that as
Stacks operated the cutting machine he (the
boy) would gather the excelsior and feed the
press and bale it; that he was able to bale
the excelsior as fast as it was cut, and had
been able to do so, and to keep the floor
upon which he stood in feeding the press
clear, up to the day of his injury; that about
noon of that day he was directed to go to
another part of the city upon a mission not

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep r Indexes

included within his employment, and upon his return found that the excelsior had accumulated and become pressed up and around the baling press almost level with its top; that he said to Mr. Stacks, "'I did not have room to work there;' and he said we did not have anywhere to put the excelsior. He told me I would have to feed it as it was." He further testified to the effect he had to feed the baling press as directed by Mr. Stacks, and while in the act of pressing excelsior into the hopper of the press, and while standing on the accumulated excelsior after he had fed it away from around and under him about half down to the floor, the excelsior slipped from under him, and he was thrown forward and one of his hands caught and crushed in the press before he could extricate it.

The evidence sharply conflicted on the issue of whether the boy had been warned of the dangers attending his employment. He testified that after he had been employed by Mr. Hartshorn the latter took him down to the excelsior room and told him that "Mr. Stacks would show me what to do. He did not say anything else. After that Mr. Stacks just took the excelsior in his arms and packed it in and told me to do likewise. He did not give me any instruction or warning about the danger or probability of getting caught in the machine, or anything of the kind. He did not warn me not to stand on the excelsior." Mr. Hartshorn testified that "when I first took him [the boy] down there I turned him over to Stacks, who had charge of the place. I visited the place every morning. One morning I went there, and the boy had let the excelsior accumulate up to the height of the first timber of the press, and I said, 'Here, this won't do,' and explained to him if he stood upon that he would lose his balance and fall over in there. 'You must stand on the floor.' And he says, 'Well, it is a lot easier for me to run it here.' The first occurrence was the day prior to the time the boy got hurt. The morning of the day the boy got hurt I spoke right sharply to him. I said, 'Did not I tell you to keep off of this?' and he said, 'It is much easier,' and I says: 'You must keep off of this, or you won't work here any longer; it is dangerous.' I tried to impress upon his mind that he must keep off it, and keep it off the floor. I went to Stacks and told him that boy was going to fall in there and get hurt, and I says: 'Either keep that boy off that excelsior and make him keep it clean away from there—clean all around—or fire him right straight. I won't take a chance like that.'"

Stacks also testified. He stated, among other things: "The boy came down one evening and said Hartshorn hired him and sent him down to me. I explained to him the danger there was in the press. * * * The morning of the day the boy got hurt Hartshorn came up there and stopped and talked with the boy. After he talked to the boy, he came to me and says, 'Stacks, if that boy don't keep the excelsior out of his way, you fire him.' After Hartshorn went away, I told him [the boy] Hartshorn had been after me and told him to keep the excelsior out of his way, and if he did not I would fire him. I said to him that was what Hartshorn told me." Stacks further testified to circumstances indicating that the boy's hurt was due to the fact that he was looking at a person standing at a window in the east side of the building, instead of at his work; and there was other evidence to the effect that the cutting and baling machines and the room within which they were located were reasonably safe under usual conditions. Other facts may be hereinafter added in the course of this opinion.

[1] Pretermitting a discussion of propositions relating to grounds of negligence not submitted, we will first notice appellants' fourth assignment of error. In this complaint is made of the charge submitting the issue of a safe place within which to work, on the ground that it was inapplicable, the particular proposition being that: "The evidence showing that the place furnished appellee in which to work was safe and not defective, and that it was rendered unsafe, if at all, by the manner in which appellee and his fellow employé, Mr. Stacks, executed the work, and that these conditions of which appellee complained were temporary and a mere detail of the work, which appellant was not obliged to supervise, the said charge was inapplicable to the case, and it was error to overrule the motion for a new trial."

That it is the duty of the master to use ordinary care to provide his servants or employés a reasonably safe place to work, and that this duty is nondelegable, is too well established to require the citation of authority. But the liability of the master for a nonobservance of this rule is held not to extend to mere transitory perils of which he has no notice and arising during the performance of the duties of the employé, and not brought about by reason of faults of plan or of construction, or for want of reasonable rules for the protection of the employé. See 2 Labatt on Master and Servant, §§ 587, 588. Direct Navigation Co. v. Anderson, 29 Tex. Civ. App. 65, 69 S. W. 174; Wells Fargo & Co. v. Page, 29 Tex. Civ. App. 489, 68 S. W. 528; Armour & Co. v. Dumas, 43 Tex. Civ. App. 36, 95 S. W. 710. In the Anderson Case Anderson's injury was caused by his foot slipping from an iron pipe that had been negligently permitted by other employés to remain upon the deck of a tugboat, and it was held that the danger thus brought about was one of Anderson's assumed risks, and that the master was not liable. In the Page Case it was held that the express company was not liable for the negligence of one of Page's fellow servants in so placing a piece of tim-

ber in an express car as to permit of its falling upon Page's foot. And in the Dumas Case this court held that the master was not liable for the negligence of a sweeping gang, which had permitted a piece of timber with spikes or nails therein, with upturned points, to remain upon the floor of the room within which Dumas was at work, and by reason of which Dumas was injured. In all of these cases the injuries were caused by mere temporary conditions, occasioned by the negligence of fellow servants, which the master could not reasonably have anticipated. But not so here as we think. It is to be observed that, while appellants now urge that Stacks, the foreman in charge of the room within which Elton C. Williamson was at work, was a fellow servant with him, yet the evidence quoted shows that to him was committed not only the power of general superintendence, but also the specific duty of seeing that the boy should not feed the press while standing on the excelsior, having power to discharge, and appellants did not even plead that the injury complained of was caused by the negligence of a fellow servant. The trial below seems to have proceeded upon the theory throughout that Stacks was a vice principal; the defense being that he in fact was guilty of no negligence in either failing to remove the accumulated excelsior from the spot where it was Elton C. Williamson's duty to stand, or in giving the order that he did for the boy to proceed with his work in the condition the excelsior was shown to be. It is to be further observed that the condition with which the boy was confronted on his return from another part of the city, as stated by him, can hardly be said to be a mere transitory condition, not to have been anticipated. As shown by the testimony of appellant Hartshorn himself, excelsior had more than once before accumulated on the spot from which the excelsior press was to be fed; and while he, as well as Stacks, testified that it was the duty of the boy to keep the place clean and free from accumulated excelsior, yet the fact that the excelsior was liable to so accumulate, both from careless handling on the part of the boy and in the very manner in which it was shown to have accumulated on the occasion in question, must have been in contemplation of the master, Hartshorn, and certainly was within the contemplation of Stacks, the operator of the cutting machines. He could but know, and in fact does not deny, that upon the return of the boy the excelsior had accumulated as the result of his own labor during the boy's absence.

Under such circumstances we can but think, in the absence of contributory negligence on the boy's part, and in the absence of a risk assumed by him because of a knowledge of the danger, that the master would be liable for negligence on the part of Stacks, whether he be viewed as a vice principal or merely as a coemployé. See S. A. Foundry Co. v. Drish, 38 Tex. Civ. App. 214, 85 S. W. 440; So. Pac. Ry. Co. v. Markey (Sup.) 19 S. W. 392; McDonald v. Champion Iron & Steel Co., 140 Mich. 401, 103 N. W. 829. The case last cited seems particularly in point. There a boy of 14 years of age was employed to gather scrap that fell from the back of a trimming machine and bind them in bundles and place the bundles behind him. Other boys were likewise engaged behind other trimming machines extending in a line within the same room. The boy, in going behind the extended line of cutting machines as the circumstances show that it was his duty to do at the time, stumbled over an unseen bundle of scraps that another boy had negligently permitted to remain in the way, and it was held that the master was liable, inasmuch as the space provided for the work was confined, and that the usual and required method of doing the work might reasonably be expected to result in the piling of scraps across the passageway near the cogwheels, and thereby expose passing scrap boys to serious peril, and inasmuch as the defendant had not made adequate provisions for the removal of the scrap, but permitted the accumulation; the decision proceeding upon the theory that the rule requiring the master to furnish a safe place to work applied, and that the negligence of the employé who left the bundle of scrap in the way was not among the assumed risks of the injured boy.

[2-5] Of course, if Elton Williamson was guilty of negligence, or if his injury was the result of a risk assumed by him, the judgment should be set aside; but both of these issues were submitted to the jury, and the evidence is such as that we cannot disturb the verdict thereon in appellee's favor. The boy specifically denied that he was looking at a person in an east window, and thus permitted his hand to be caught in the press; and it cannot be said, as a matter of law, that he was guilty of contributory negligence in obeying his foreman's orders to proceed with his work with the condition of the excelsior as it was. The risks assumed were those ordinarily attending the work for which he was employed, but he did not assume negligence on the part of his employer, or of one to whom the master had committed an undelegable duty; and while the boy testified that he knew the danger of getting his hand in the press, he clearly denied a knowledge of the character and extent of the danger involved in attempting to feed the press while standing on an elevated accumulation of excelsior. That both appellants Hartshorn and Stacks testified to the effect otherwise cannot now avail appellants. The verdict settled this controversy in the boy's favor. It is undisputed that Elton Williamson, while bright for one of his years, was of an immature age and

wholly inexperienced in the work for which he was called to do, and it was the duty of the master to warn him of all dangers not obvious, or not brought home to the knowledge of the boy by the exercise of ordinary care in the performance of his own duties, and a failure to so warn him—and such failure must be imputed to the verdict of the jury—constituted negligence not within the risks assumed by Elton Williamson.

We conclude that the evidence supports the verdict in appellee's favor on both the issue of contributory negligence and of assumed risk, as well, also, as the verdict to the effect that appellants were guilty of negligence in not maintaining, at the time of Elton Williamson's injury, a safe place for him to work. What we have said, we think, sufficiently disposes of the questions presented, and it follows that the judgment must be affirmed.